AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) iPhone Cellular Smartphone Assigned<br>Telephone Number (623) 224-0423 | Case No. 23-8143mB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A-3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B-3.

**YOU ARE COMMANDED** to execute this warrant on or before _____4/25/23_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  4-11-23 4:35pm

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A-3**

*Property to be searched*

The property to be searched is one (1) iPhone cellular smartphone assigned telephone number (623) 224-0423 (hereafter, "SUBJECT CELLULAR TELEPHONE 3"). SUBJECT CELLULAR TELEPHONE 3 is currently being stored at the United States Drug Enforcement Administration Office in Phoenix, Arizona. This warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 3 for the purpose of identifying the electronically stored information described in Attachment B-3.

**ATTACHMENT B-3**

*Property to be seized*

1.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 3 that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

     a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

     b.   all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

     c.   all bank records, checks, credit card bills, account information, or other financial records;

     d.   all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

     e.   any information recording schedule or travel;

     f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

     g.   contextual information necessary to understand the above evidence; and

2.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 3 showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

1

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
|---|---|
| One (1) iPhone Cellular Smartphone Assigned Telephone Number (623) 224-0423 | Case No. 23-8143mB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A-3**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B-3.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Johanna Childress**

☒ Continued on the attached sheet.

☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA William Bryan
*William H. Bryan* Digitally signed by WILLIAM BRYAN Date: 2023.04.11 15:59:09 -07'00'

JOHANNA CHILDRESS Digitally signed by JOHANNA CHILDRESS Date: 2023.04.11 15:31:29 -07'00'

*Applicant's Signature*

Johanna Childress, Special Agent, DEA
*Printed name and title*

Sworn telephonically and signed electronically.

Date: _4-11-23   4:35 pm_

*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, Magistrate Judge
*Printed name and title*

## **ATTACHMENT A-3**

*Property to be searched*

The property to be searched is one (1) iPhone cellular smartphone assigned telephone number (623) 224-0423 (hereafter, "SUBJECT CELLULAR TELEPHONE 3"). SUBJECT CELLULAR TELEPHONE 3 is currently being stored at the United States Drug Enforcement Administration Office in Phoenix, Arizona. This warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 3 for the purpose of identifying the electronically stored information described in Attachment B-3.

**ATTACHMENT B-3**

*Property to be seized*

1.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 3 that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

      a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

      b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

      e.  any information recording schedule or travel;

      f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      g.  contextual information necessary to understand the above evidence; and

2.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 3 showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.      As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

1

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, United States Drug Enforcement (DEA) Special Agent Johanna Childress, being first duly sworn, hereby deposes and states as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A-1 (hereafter, "SUBJECT CELLULAR TELEPHONE 1"), Attachment A-2 (hereafter, "SUBJECT CELLULAR TELEPHONE 2"), Attachment A-3 (hereafter, "SUBJECT CELLULAR TELEPHONE 3"), and Attachment A-4 (hereafter, "SUBJECT CELLULAR TELEPHONE 4"), respectively, in order to extract the electronically stored information set forth in Attachment B-1, Attachment B-2, Attachment B-3, and Attachment B-4, respectively, which represent evidence and/or instrumentalities of the criminal violations further described below. Hereinafter, SUBJECT CELLULAR TELEPHONE 1, SUBJECT CELLULAR TELEPHONE 2, SUBJECT CELLULAR TELEPHONE 3, and SUBJECT CELLULAR TELEPHONE 4 shall be referred to collectively as the "SUBJECT CELLULAR TELEPHONES".

2.    I am a criminal investigator of the United States within the meaning of Title 18, United States Code Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code Section 2516.

3.    I have been a Special Agent with DEA since December 2022 and am currently assigned to the Phoenix Field Division (PFD) DEALERS Group 16. Prior to becoming a Special Agent, I attended the DEA's eighteen-week training academy located in Quantico, Virginia. While at the DEA training academy, I received formal training in investigative techniques, drug identification, and laws pertaining to drug investigations. I have also received on-the-job training from senior agents regarding the manner in which

drugs are trafficked and best practices for law enforcement to counter the drug trafficking threat.

4.      In the course of conducting drug investigations, I have personally interviewed informants and persons involved in the distribution of illegal drugs. In addition, I have provided surveillance in support of federal investigations that utilized court-authorized interceptions of wire and electronic communications. I have also consulted with other experienced investigators concerning the practices of drug trafficking organizations and the strategies used to investigate them.

5.      I am familiar with the methods used in drug-trafficking operations and the drug-trafficking patterns employed by DTOs.  During my tenure with the DEA, I have become knowledgeable of the methods and the language typically used by DTOs.  I know that drug-traffickers often require the use of one or more communication facilities to coordinate times, places, and procedures for importing, concealing, and distributing controlled substances, and for arranging the disposition of drug-trafficking proceeds.  I know that the use of telephones is essential in maintaining communication with sources of supply, brokers, customers, financiers, transporters, dealers, money couriers, and stash house operators.

6.      In preparing this affidavit, I have conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein. Furthermore, I have personal knowledge of the following facts or has learned them from the individual(s) mentioned herein.

7.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers.

## II.    **BASIS FOR PROBABLE CAUSE**

8.    The DEA confidential source (CS) that provided this information to law enforcement has been actively working for the DEA since February of 2023 and is believed to be credible and reliable. The CS is working for consideration for pending criminal charges. To date, the CS has been involved in two (2) law enforcement operations, which have led to the seizure of distribution quantities of methamphetamine, pills containing fentanyl, marijuana, and proceeds believed to be generated from the sale of controlled substances. The CS has contacts in Arizona who provided the CS with drug-related information. The CS shares this information to DEA

9.    On or about March 21, 2023, the DEA CS provided law enforcement officers with telephone number 480-869-8203. According to the CS, Daniel Beltran-Castillo (BELTRAN-CASTILLO) utilized the cellular telephone assigned call number 480-869-8203 (hereafter, "SUBJECT CELLULAR TELEPHONE 1") to conduct drug-related activity. The CS informed law enforcement officers that the CS has been acquainted with BELTRAN-CASTILLO for approximately one year, and that the CS has conducted multiple drug-trafficking transactions with BELTRAN-CASTILLO involving distribution quantities of methamphetamine.

10.    On March 23, 2023, at the instruction of DEA agents, the CS conducted consensually recorded telephonic communications with BELTRAN-CASTILLO regarding purchasing 5,000 fentanyl pills in exchange for US$1,900. The CS and BELTRAN-CASTILLO agreed that BELTRAN-CASTILLO would deliver the 5,000 fentanyl pills to an apartment complex located on North 45th Avenue in Phoenix, Arizona. According to the CS, BELTRAN-CASTILLO had conducted drug-related activity at this location on multiple occasions in the past.

11.    Based on this information, at approximately 1:00pm, law enforcement officers established surveillance near the agreed upon apartment complex, in anticipation

3

of the drug transaction between the CS and BELTRAN-CASTILLO. At approximately 1:18pm, BELTRAN-CASTILLO informed the CS that he (BELTRAN-CASTILLO) would be sending a courier, later identified as co-defendant Bulfrano Angulo-Torres (ANGULO-TORRES), to deliver the 5,000 fentanyl pills. BELTRAN-CASTILLO further advised that he (BELTRAN-CASTILLO) would be delivering more than the 5,000 requested fentanyl pills. BELTRAN-CASTILLO asked the CS to take the requested 5,000 pills and leave the remaining fentanyl pills for pick up by an unidentified individual at a later time.

12.     At approximately 2:00pm, BELTRAN-CASTILLO informed the CS that the courier (ANGULO-TORRES) would arrive driving a red car. Soon thereafter, the CS received a telephone call from the cellular telephone assigned call number 602-422-0086 (hereafter, "SUBJECT CELLULAR TELEPHONE 2"). The CS directed the user of SUBJECT CELLULAR TELEPHONE 2 (later identified as ANGULO-TORRES) to the predetermined apartment complex.

13.     At approximately 2:10pm, law enforcement officers observed a red Toyota Camry enter the parking lot of the apartment complex. Investigators observed a male driver and a female front-seat passenger, later identified as co-defendant ANGULO-TORRES and co-defendant Beatriz Figueroa-Arevalo (FIGUEROA-AREVALO), respectively. Investigators observed the CS make contact with ANGULO-TORRES and FIGUEROA-AREVALO. Law enforcement officers observed the CS speak with ANGULO-TORRES through the driver's side door window. The CS observed FIGUEROA-AREVALO carrying a large, unsealed box in her (FIGUEROA-AREVALO's) lap.  FIGUEROA-AREVALO then handed the box to ANGULO-TORRES, who then handed the box to the CS.

14.     Once the CS departed the area of the red Toyota Camry carrying the box, investigators wearing marked police attire with law enforcement vehicle lights and sirens

activated arrested ANGULO-TORRES and FIGUEROA-AREVALO without incident. Investigators identified ANGULO-TORRES through his (ANGULO-TORRES') Mexican passport and Sonora, Mexico driver's license. Law enforcement officers identified FIGUEROA-AREVALO through her (FIGUEROA-AREVALO's) Arizona State identification card.

15.     Upon searching the red Toyota Camry incident to the respective arrests of ANGULO-TORRES and FIGUEROA-AREVALO, law enforcement officers discovered the infant child of ANGULO-TORRES and FIGUEROA-AREVALO in the rear driver's side passenger seat. Investigators also discovered a fully-loaded firearm located in the center console of the red Toyota Camry. In the rear passenger compartment next to the infant, law enforcement officers discovered approximately US$3,886 concealed in a diaper bag.

16.     A search of ANGULO-TORRES' person revealed SUBJECT CELLULAR TELEPHONE 2 and the cellular telephone assigned call number 623-224-0423 (hereafter, "SUBJECT CELLULAR TELEPHONE 3"). ANGULO-TORRES claimed ownership of SUBJECT CELLULAR TELEPHONE 2 and SUBJECT CELLULAR TELEPHONE 3.

17.     A search of FIGUEROA-AREVALO's person revealed the cellular telephone assigned call number 623-418-6175 (hereafter, "SUBJECT CELLULAR TELEPHONE 4"). FIGUEROA-ARELVALO claimed ownership of SUBJECT CELLULAR TELEPHONE 4.

18.     Upon securing ANGULO-TORRES and FIGUEROA-AREVALO and the red Toyota Camry, investigators retrieved the suspected fentanyl pills from the CS. The suspected fentanyl pills were discovered within an open black garbage bag contained within the opened cardboard box. The suspected fentanyl pills were packaged in 70 clear plastic bags. The total gross weight of the fentanyl pills was approximately 9.6389

kilograms (including packaging). A sample of the suspected fentanyl pills field-tested presumptive positive for fentanyl.

19. Post-arrest, post-*Miranda*, ANGULO-TORRES waived his Constitutional rights and agreed to answer questions without the presence of an attorney. ANGULO-TORRES admitted that he (ANGULO- TORRES) arrived to deliver "pastillas" ("pills" in Spanish), a common Spanish term that if often utilized by drug-traffickers to refer to fentanyl pills. ANGULO TORRES estimated that the box contained approximately 50,000 suspected fentanyl pills.

20. Post-arrest, post-*Miranda*, FIGUEROA-AREVALO waived her Constitutional rights and agreed to answer questions without the presence of an attorney. FIGUEROA-AREVALO admitted to owning the firearm present in the red Toyota Camry, as well as the concealed United States currency discovered in the diaper bag. FIGUEROA-AREVALO advised that she (FIGUEROA-AREVALO) had the box that was provided to the CS and that she (FIGUEROA-AREVALO) could see a black bag inside the box. FIGUEROA-AREVALO advised she (FIGUEROA-AREVALO) handed the box to ANGULO-TORRES, who in turn provided the box the CS. FIGUEROA-AREVALO told law enforcement that she (FIGUEROA-AREVALO) had a feeling that the box contained something "bad", without verifying what it was.

21. Following the respective arrests of ANGULO-TORRES and FIGUEROA-AREVALO, at approximately 5:30 p.m., law enforcement officers observed BELTRAN-CASTILLO standing in front of his (BELTRAN-CASTILLO's) residence. Law enforcement officers then arrested BELTRAN-CASTILLO without incident. A consensual search of BELTRAN-CASTILLO's vehicle revealed 522.7 grams of marijuana (total gross weight, including packaging) on the front passenger seat. A search of BELTRAN-CASTILLO's person revealed SUBJECT CELLULAR TELEPHONE 1. BELTRAN CASTILLO claimed ownership of SUBJECT CELLULAR TELEPHONE 1.

22.     At approximately 8:30pm, law enforcement officers obtained and executed a warrant to search the residence of ANGULO-TORRES and FIGUEROA-AREVALO. Within the residence, investigators located an assault rifle and approximately US$10,500 within the bedroom closet and drawers within the master bedroom. In another closet of the residence, law enforcement officers discovered an additional 664.8 grams (total gross weight, including packaging) of suspected fentanyl pills. The suspected fentanyl pills seized from the residence of ANGULO-TORRES and FIGUEROA-AREVALO were identical in appearance and packaged in the same manner as the suspected fentanyl pills delivered to the CS earlier that same day.

23.     The SUBJECT CELLULAR TELEPHONES are currently in the lawful possession of the DEA at the DEA Office in Phoenix, Arizona. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the possession of DEA.

**ITEMS TO BE SEIZED**

24.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B-1, Attachment B-2, Attachment B-3, and Attachment B-4, respectively, will be found in the contents of SUBJECT CELLULAR TELEPHONE 1, SUBJECT CELLULAR TELEPHONE 2, SUBJECT CELLULAR TELEPHONE 3, and SUBJECT CELLULAR TELEPHONE 4, respectively.

25.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.      Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities.  Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONES.

26.      In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONES.

**DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

27.      As described in Attachment B-1, Attachment B-2, Attachment B-3, and Attachment B-4, respectively, this application seeks permission to search for records and information that might be found in the contents of SUBJECT CELLULAR TELEPHONE 1, SUBJECT CELLULAR TELEPHONE 2, SUBJECT CELLULAR TELEPHONE 3, and SUBJECT CELLULAR TELEPHONE 4, respectively.   Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

28.      *Probable cause.*  Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.   The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The cellular telephone is also likely to be a storage medium for evidence of crime.

From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In

addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

29.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session

times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other

11

storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

30.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

31.   *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**CONCLUSION**

32.   I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) are likely to be found in the contents of SUBJECT CELLULAR TELEPHONE 1, SUBJECT CELLULAR TELEPHONE 2, SUBJECT CELLULAR TELEPHONE 3, and SUBJECT CELLULAR

//

//

TELEPHONE 4, respectively, further described in Attachment A-1, Attachment A-2, Attachment A-3, and Attachment A-4, respectively.

JOHANNA CHILDRESS
Digitally signed by JOHANNA CHILDRESS
Date: 2023.04.11 15:34:25 -07'00'

Special Agent Johanna Childress
U.S. Drug Enforcement Administration

Subscribed electronically and sworn to telephonically this ___11th___ day of April, 2023.

HONORABLE JOHN Z. BOYLE
UNITED STATES MAGISTRATE JUDGE

13